———————o———————

No. 5684.

## WIDOW JOSEPH REICHELT vs. ST. VINCENT DE PAUL CEMETERY ASSOCIATION.

### Syllabus.

1.  Act 36 of 1912 (p. 44) making it a crime to "desecrate, injure, deface, mutilate or destroy, any grave, tomb or monument erected to the dead," is aimed exclusively at misdeeds of vandals and ghouls, and cannot be made to cover the acts of persons proceeding within their lawful and contract rights.

2.  A so-called "lease" of a cemetery vault for the burial of a dead body, containing a clause that the vault "shall not be used twice" during the contract, presents the elements of a contract of deposit rather than of lease and the legal possession is in the cemetery association and not in the so-called "lessee."

Appeal from the Civil District Court for the Parish of Orleans, Division "A," No. 98,467, Hon. T. C. W. Ellis, Judge.

Theo. Cotonio, for plaintiff and appellant.

Carroll, Henderson & Carroll, for defendant and appellee.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court as follows:

Plaintiff averred in substance, that through the arbitrary action of defendant she was not allowed to bury the

— 100 —

dead body of her son in a vault where she had a right to place it, but was compelled to lease another value from defendant at a cost of $20.00, and that defendant was threatening to remove the body unless she purchased the new vault at an additional cost of $65.00.

She asked for $1000.00 damages because of the arbitrary and illegal action of defendant, and for humiliation and injury to her feelings resulting therefrom; she further asked for the return of the $20.00 and for an injunction restraining the defendant from removing the body; and she prayed for trial by jury.

Defendant answered denying that it had arbitrarily or otherwise refused to allow the body of plaintiff's son to be placed in the vault of her selection, but averred, in substance, that the body was placed elsewhere solely by reason of the fact that, because of the remains of previous interments, it was found that there was no room in said vault for the casket containing the body of plaintiff's son; that thereupon someone (her son-in-law) acting in plaintiff's behalf, had leased a vault in defendant's cemetery in which the body of plaintiff's son was interred; that said lease was for the term of one year and contained a provision that at the end of that time the remains might be removed without further notice, unless the lease were renewed or the vault purchased (at a fixed price), of which provision defendant purposed to avail itself. And defendant averred its willingness then and at all times to renew the lease or sell the vault, or to transfer the remains to any place designated by plaintiff on payment of the cost of such transfer.

The matter was tried by jury, as prayed for; the evidence adduced at the trial was conflicting to a degree; but the jury returned a verdict for the defendant, and their verdict was approved and a new trial refused by the District Judge.

These heard and saw the witnesses, and it was peculiarly within their providence to determine the degree of credibility due to their testimony. They resolved the conflict in favor of the witnesses for the defendant and our own reading of the testimony has not convinced us that there was error in their finding of fact. We therefore adopt it.

The remaining questions are of law.

Plaintiff claims that the body once interred cannot be removed without her consent; and she refers us to Act 36 of 1912 (p. 44) making it a crime to desecrate, injure, deface, mulilate or destroy, any grave, tomb or monument erected to the dead. This statute has not the slightest application to the case at bar. It is aimed exclusively at the misdeeds of vandals and ghouls and cannot, even by straining its language, be made to cover the acts of persons proceeding within their legal and contract rights.

Again plaintiff likening herself, as it were, to the tenant of an immovable, urges that she cannot be dispossessed except by suit in the manner and form prescribed by statute; and she contends that her alleged waiver of such proceeding is contrary to public policy and therefore void.

There is authority in other jurisdictions for the proposition that it is against public policy, and therefore void, for the lessee of a tenement to consent in advance to an eviction without formal legal process. See **Wilson v. Campbell, 8 L. R. A. (N. S.) p. 426** and **French v. Willer, 2 L. R. A., 717**

But the point has never been passed upon by our own Supreme Court. In **Thayer v. Littlejohn, 1 Rob., 140**, damages were very properly awarded for what the Court termed a "frontier process" of eviction, but there was no pretense in that case that the lessee had at any time waived legal process. In **Van Wren vs. Flynn, 34 An.,**

1158, a vendee had agreed that upon failure to pay the price the vendor might take back the goods sold; but it was held that this did not authorize the vendor to enter the vendee's residence for that purpose in his absence and without his consent.

But in the course of the opinion delivered in the last named case, the Court used language which might imply that an agreement of that nature might be binding if clearly and unequivocally expressed.

And in City v. Camp, 105 La., 288, which involved a contract of ground rent, containing a stipulation that on failure to pay two installments of the rent, the tenant should forfeit all the rights he had acquired in the land sold, and "consented to be expelled therefrom on an order of Court obtained on the sworn demand of the vendor," the Court held (p. 291) that the failure to pay put an end to the contract, and the tenant might be turned out without the formality of previously placing him in default; citing Clark's Heirs vs. Christ Church, 4 La., 286, and Poultney's Heirs vs. Barrett, 8 La., 441. But in these three cases, it will be observed that some judicial process, though informal, was provided for.

It cannot, therefore, be said that the question of public policy above contended for, has ever been squarely presented to or passed upon by our Court.

Be this, however, as it may, we do not think the doctrine has any application here. It is based upon considerations and applies to conditions which do not enter into or affect a contract such as the one herein involved.

For, though termed a lease, the distinctive feature of such a contract is that of a deposit.

When the vault has received the body it is sealed until time and nature have accomplished their office. And all that the parties have in contemplation is that the body

shall remain therein undisturbed during the time specified; and for this the cemetery association is responsible.

But there is no delivery of possession, in fact or in law, by the lessor to the lessee, during the so-called lease, and therefore no possession to be recovered at the end thereof. This is shown conclusively by that clause of the contract providing that "this vault cannot be used twice during this lease," a clause which also shows the true intent of the parties and the true nature of the contract

For it is contrary to the very nature of a contract of lease that the lessee should be forbidden the use of the leased thing during the whole term of the lease. **C. C.,** **2669, 2674.** And it is clear therefore that the parties had in view nothing more than to provide a place of deposit for the body during the time specified in the contract.

And we see nothing contrary to good morals or public policy in a clause in such a contract by which, in effect, the cemetery association declines to keep the body beyond the time agreed upon without additional compensation, and reserves the right to relieve itself without legal formality from any further responsibility therefor.

The judgment appealed from appears to us correct and it is therefore affirmed.

Judgment affirmed.

Opinion and decree, January 13th, 1913.

Rehearing refused February 10th, 1913.

Writ denied March 19, 1913.